**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

```
BILLY R. WILLIAMS,               :
                                 :
          Plaintiff,             :   Civil Action No. 03-239E
                                 :
vs.                              :   Hon. Maurice B. Cohill, Jr.
                                 :
                                 :
PENNSYLVANIA STATE POLICE, AN    :
AGENCY OF THE COMMONWEALTH       :
OF PENNSYLVANIA,                 :
                                 :   Electronically Filed
          Defendant.             :
```

**JOINT PROPOSED JURY INSTRUCTIONS**

**Joint Proposed Jury Instruction No. 1**
**The Nature of the Claim**

In this case the Plaintiff Billy Williams makes claims under Federal Civil Rights statutes that prohibit employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Williams alleges that the Pennsylvania State Police, or PSP, intentionally discriminated against him because of his race during the course of his employment with the Pennsylvania State Police. In particular, Williams claims that the PSP discriminated against him because of his race when it transferred him in September 2000 and January 2001 to less prestigious positions with substantially different material responsibilities. Plaintiff is also claiming that he was subjected to a hostile working environment during his employment with the Defendant.

Defendant denies that Plaintiff was discriminated against in any way. Further, Defendant asserts that it had legitimate, non-discriminatory business reasons for all of its actions concerning Plaintiff. In particular, Defendant asserts that Plaintiff was not subjected to a hostile environment and that he was transferred because his supervisor had substantial and legitimate doubts

concerning Plaintiff's ability to continue to perform the duties of the Troop Commander position.

I will now instruct you more fully on the issues you must address in this case.[1]

*Defendant objects to the inclusion of averments of fact in this instruction as it is premature to include such material prior to the presentation of any evidence.*

### Joint Proposed Instruction No. 2
### Elements of a Title VII Claim – Disparate Treatment — Pretext

In this case Mr. Williams is alleging that the Pennsylvania State Police transferred him to less prestigious positions with significantly different material responsibilities in September 2000 and in January 2001. In order for Mr. Williams to recover on these discrimination claims against the Pennsylvania State Police, Mr. Williams must prove that Pennsylvania State Police intentionally discriminated against him. This means that Mr. Williams must prove that his race was a determinative factor in Pennsylvania State Police's decision to transfer Mr. Williams.

To prevail on these claims, Mr. Williams must prove both of the following by a preponderance of the evidence:

First: the Pennsylvania State Police transferred Mr. Williams to less prestigious positions with significantly different material responsibilities; and

Second: Mr. Williams's race was a determinative factor in this decision.

Although Mr. Williams must prove that the Pennsylvania State Police acted with the intent to discriminate, Mr. Williams is not required to prove that the Pennsylvania State Police acted with the particular intent to violate his federal civil rights. Moreover, Mr. Williams is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

The Pennsylvania State Police has given a nondiscriminatory reason for its decisions to transfer Mr. Williams. If you disbelieve Pennsylvania State Police's explanations for its conduct, then you may, but need not, find that Mr. Williams has proved intentional discrimination. In determining whether the Pennsylvania State Police's stated reasons for its actions were a pretext, or excuse, for discrimination, you may not question the

---

[1] Adapted from Devitt, Blackmar & Wolff, §104.101; Committee on Model Civil Jury Instructions for the Third Circuit, at Instructions for Employment Discrimination Claims Under Title VII, section 5.0, *available at* www.ca3.uscourts.gov/modeljuryinstructions.htm

Pennsylvania State Police's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of the Pennsylvania State Police or believe it is harsh or unreasonable. You are not to consider the Pennsylvania State Police's wisdom. However, you may consider whether Pennsylvania State Police's reason is merely a cover-up for discrimination.

Ultimately, you must decide whether Mr. Williams has proven that his race was a determinative factor in the decisions to transfer him. "Determinative factor" means that if not for Mr. Williams's race, the Pennsylvania State Police's decisions to transfer him would not have occurred. [2]

*Defendant objects to the inclusion of averments of fact in this instruction as it is premature to include such material prior to the presentation of any evidence.*

---

[2] Committee on Model Civil Jury Instructions for the Third Circuit, at Instructions for Employment Discrimination Claims Under Title VII, section 5.1.2, *available at* www.ca3.uscourts.gov/modeljuryinstructions.htm

**                    Joint Proposed Instruction No. 3**
**Elements of a Title VII Action — Harassment — Hostile Work Environment — Tangible Employment  Action**

Mr. Williams claims that he was subjected to harassment by Captain Simon and Major Seilhamer and that this harassment was motivated by Mr. Williams' race.

The Defendant is liable for the actions of Captain Simon and Major Seilhamer in mr. Williams' claim of harassment if Mr. Williams proves all of the following elements by a preponderance of the evidence:

First: Mr. Williams was subjected to intentional discrimination by Captain Simon and Major Seilhamer. Here, the conduct that Mr. Williams claims was intentional discrimination included Captain Simon frequently requiring Mr. Williams to respond to facially frivolous complaints by Mr. Williams' subordinates, the refusal of Captain Simon or Major Seilhamer to take any action when Plaintiff complained of offensive and racist conduct of his subordinates, Captain Simon's imposition of a number of requirements and restrictions on Mr. Williams' performance of his duties that substantially interfered with Mr. Williams' ability to perform his duties while not imposing the same restrictions on Caucasian employees, Mr. Seilhamer's reference to Mr. Williams' duty station by a term with possible negative racial connotations, Captain Simon's consistent conduct in denying overtime for Mercer station while permitting overtime for the other stations, and the transfers in September 2000 and January 2001.

Second: That this conduct was not welcomed by Mr. Williams.

Third: The conduct of Captain Simon and Major Seilhamer was motivated by the fact that Mr. Williams is black.

Fourth: The conduct was so severe or pervasive that a reasonable person in Mr. Williams' position would find Mr. Williams' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable black employee's reaction to Mr. Williams' work environment.

Fifth: Mr. Williams believed his work environment to be hostile or abusive as a result of the conduct of Captain Simon and Major Seilhamer.

>Sixth: Mr. Williams suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.[3]

*Defendant objects to the inclusion of averments of fact in this instruction as it is premature to include such material prior to the presentation of any evidence.*

## Joint Proposed Instruction No. 4
## Title VII Definitions — Hostile or Abusive Work Environment

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

• The total physical environment of Mr. Williams' work area.
• The degree and type of language and insult that filled the environment before and after Mr. Williams' arrived.
• The reasonable expectations of Mr. Williams upon entering the environment.
• The frequency of the offensive conduct.
• The severity of the conduct.
• The effect of the working environment on Mr. Williams' mental and emotional well-being.
• Whether the conduct was unwelcome, that is, conduct Mr. Williams regarded as unwanted or unpleasant.
• Whether the conduct was pervasive.
• Whether the conduct was directed toward Mr. Williams.
• Whether the conduct was physically threatening or humiliating.
• Whether the conduct was merely a tasteless remark.
• Whether the conduct unreasonably interfered with Mr. Williams' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work

---

[3]Committee on Model Civil Jury Instructions for the Third Circuit, at Instructions for Employment Discrimination Claims Under Title VII, section 5.1.4, *available at* www.ca3.uscourts.gov/modeljuryinstructions.htm

environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Williams was harassed because of his race. The harassing conduct may, but need not be racial in nature. Rather, its defining characteristic is that the harassment complained of is linked to the victim's race. The key question is whether Mr. Williams, as a black employee, was subjected to harsh employment conditions to which those outside the protected class were not.

It is important to understand that, in determining whether a hostile work environment existed at the employer's workplace you must consider the evidence from the perspective of a reasonable member of the protected class in the same position. That is, you must determine whether a reasonable black employee would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable black employee. The reasonable black employee is simply one of normal sensitivity and emotional make-up.[4]

**Joint Proposed Instruction No. 5**
<u>**HOSTILE WORK ENVIRONMENT (Because of Race)**</u>

Even if you conclude that plaintiff was subjected to a hostile work environment, you may find in favor of the plaintiff only if he has proven by a preponderance of the evidence that such harassment was motivated because of his race. A claim for hostile work environment based upon race cannot be proven only by harassing behavior because harassing behavior alone, no matter how ill-willed or abusive, is not prohibited by the law. The plaintiff must prove the harassing behavior was motivated by the plaintiff's race. So, if after reviewing the evidence, you conclude that the plaintiff has proved that the defendant mistreated the plaintiff or that the conduct attributable to the defendant was motivated by a bad working relationship, a demanding supervisor, or personal animosity

---

[4]Committee on Model Civil Jury Instructions for the Third Circuit, at Instructions for Employment Discrimination Claims Under Title VII, section 5.2.1, *available at* www.ca3.uscourts.gov/modeljuryinstructions.htm

towards the plaintiff, but that the plaintiff has not proven that the conduct was motivated by racial bias, then you must find in favor of the defendant on the plaintiff's hostile work environment claim based upon race.

To constitute impermissible discrimination, the offensive conduct is not necessarily required to include racial overtones in every instance or that each incident be sufficiently severe to detrimentally affect a black employee. In other words, acts of harassment need not be accompanied by racially discriminatory statements. Indeed, overt racial harassment is not necessary to establish a hostile environment. Discrimination is often simply masked in more subtle forms. Title VII tolerates no racial discrimination, subtle or otherwise. All that is required is a showing that race is a substantial factor in the harassment, and that if the plaintiff had been of a different race he would not have been treated in the same manner.

An employee bears the ultimate burden of establishing that the employer was motivated by prohibited, illegitimate discriminatory bias. If the employee is relying upon circumstantial evidence he must show that the reasons advanced by the employer are not true. If you the jury reject the reasons given by the employer for the adverse treatment, you are permitted, but not required, to infer that the plaintiff was the victim of illegal discrimination. The plaintiff at all times has the ultimate burden of persuasion with respect to proving all the elements of the claim.

**Joint Proposed Instruction No. 6**
**Tangible Employment Action**

If you find that Mr. Williams was subjected to a hostile work environment, then you must decide whether he suffered a "tangible employment action" as a result. Mr. Williams contends that the tangible employment action was his transfer.

A tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Therefore, what you must decide is whether this reassignment was the result of, or caused by, the alleged hostile work environment. The State Police deny that the transfer was a result of the hostile work environment, and instead claim that it was due to his poor work performance and disciplinary infraction.

If you find that his transfer was a result of the hostile work environment, then you must find in favor of Mr. Williams on this claim. Whether the transfer was a result of a hostile work environment is a fact that you must decide from the evidence in the

case.  Mr. Williams has the burden of proving this by a preponderance of the evidence.
   If you find that it was not, then you must go on to consider what we call the affirmative defense.


### Defendant's Proposed Instruction No. 7
**Affirmative Defense**

   I will instruct you now on the elements of that affirmative defense.  You must find for the State Police if you find that the State Police has proved both of the following elements by a preponderance of the evidence:
   First: The State Police exercised reasonable care to prevent harassment in the workplace on the basis of race, and also exercised reasonable care to promptly correct any harassing behavior once it occurs.
   Second: Mr. Williams unreasonably failed to take advantage of any preventive or corrective opportunities provided by the State Police.
   Proof of the four following facts will be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

   1) The State Police had established an explicit policy against discrimination in the workplace on the basis of race.

   2) That policy was fully communicated to its employees.

   3) That policy provided a reasonable way for Mr. Williams to make a claim of discrimination to higher management.

   4) Reasonable steps were taken to correct the problem, if raised by Mr. Williams.

   On the other hand, proof that Mr. Williams did not follow a reasonable complaint procedure provided by the State Police will ordinarily be enough to establish that Mr. Williams unreasonably failed to take advantage of a corrective opportunity.  Whether Mr. Williams reasonably took advantage of any complaint procedures is a fact that you must decide from the evidence in the case.

*Plaintiff objects to this instruction as it has not been supported by authority.*

**Joint Proposed Jury Instruction No.  8**
**Title VII Damages — Compensatory Damages — General Instruction**

 I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the Pennsylvania State Police should be held liable.
 If you find by a preponderance of the evidence that the Pennsylvania State Police intentionally discriminated against Mr. Williams by subjecting him to a hostile work environment and/or by transferring him in September 2000 and January 2001, then you must consider the issue of compensatory damages.  You must award Mr. Williams an amount that will fairly compensate him for any injury he actually sustained as a result of the Pennsylvania State Police's conduct.  The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Mr. Williams  in the  position he would have occupied if the discrimination had not occurred. Mr. Williams has the burden of proving damages by a preponderance of the evidence.
 Mr. Williams must show that the injury would not have occurred without the Pennsylvania State Police's act. Mr. Williams must also show that Pennsylvania State Police's act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of the Pennsylvania State Police's act. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether the Pennsylvania State Police's actions were motivated by discrimination. In other words, even assuming that the Pennsylvania State Police's actions were motivated by discrimination, Mr. Williams is not entitled to damages for an injury unless the Pennsylvania State Police's discriminatory actions actually played a substantial part in bringing about that injury.
 There can be more than one cause of an injury.  To find that the Pennsylvania State Police's act caused Mr. Williams's injury, you need not find that the Pennsylvania State Police's act was the nearest cause, either in time or space. However, if Mr. Williams's injury was caused by a later, independent event that intervened between the Pennsylvania State Police's act and Mr. Williams's injury, the Pennsylvania State Police is not liable unless the injury was reasonably foreseeable by the Pennsylvania State Police.
 In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Williams experienced as a consequence of any hostile work environment and/or as the consequence of the Pennsylvania State Police's decisions to transfer Mr. Williams in September 2000 and January 2001. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mr. Williams would have earned, either in the past or in the future, if he had not been transferred. These elements of recovery of wages that Mr. Williams would have received from the Pennsylvania State Police are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court.

You may award damages for monetary losses that Mr. Williams may suffer in the future as a result of the Pennsylvania State Police's allegedly unlawful act .

As I instructed you previously, Mr. Williams has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Williams prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

You are instructed that Mr. Williams has a duty under the law to "mitigate" his damages--that means that Mr. Williams must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the Pennsylvania State Police. It is the Pennsylvania State Police's burden to prove that Mr. Williams has failed to mitigate. So if the Pennsylvania State Police persuades you by a preponderance of the evidence that Mr. Williams failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Williams's economic damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.[5]

---

[5]Adapted from Committee on Model Civil Jury Instructions for the Third Circuit, at Instructions for Employment Discrimination Claims Under Title VII, section 5.4.1, *available at* www.ca3.uscourts.gov/modeljuryinstructions.htm.

**Joint Proposed Jury Instruction No. 9**
**General Instructions For Use At End of Trial — Deliberations**

When you retire to the jury room to deliberate, you may take with you these instructions, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.[6]

Respectfully submitted,

Date:   October 30, 2007

/s/Neal A. Sanders
Neal A. Sanders, Esquire
PA ID NO. 54618
Co-Counsel for Plaintiff,
Billy R. Williams

/s/Dirk D. Beuth
PA ID NO. 76036
Co-Counsel for Plaintiff,
Billy R. Williams

LAW OFFICES OF NEAL A. SANDERS
1924 North Main Street Extension
Butler, PA 16001
(724) 282-7771

/s/Scott A. Bradley
Scott A. Bradley
Senior Deputy Attorney General
Attorney I.D. No. 44627
Attorney for Defendant

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

(412) 565-3586

---

[6] Third Circuit Model Civil Jury Instruction 3.1