**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BILLY R. WILLIAMS, | } |
| | } |
| Plaintiff, | } |
| | } Civil Action No. 03-239 Erie |
| v. | } |
| | } Judge Cohill |
| PENNSYLVANIA STATE POLICE, AN | } |
| AGENCY OF THE COMMONWEALTH | } |
| OF PENNSYLVANIA, | } |
| | } |
| Defendant. | } |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION IN LIMINE**

This is a brief in support of the Defendant's motion *in limine*:

Initially, it is the Defendant's intention to limit this trial to the matters presented in the Complaint regarding Plaintiff's allegations of disparate treatment and hostile work environment beginning, as alleged in the Complaint filed in this matter, in June of 1999. Consequently, the Defendant believes that the Plaintiff should correspondingly limit his case to these claims of his Complaint, *i.e.*, that "[d]uring the period of June, 1999 through the present, the Defendant has subjected Plaintiff to harassment and disparate treatment because of his race,"[1] and that evidence of extraneous matters identified in Plaintiff's Pre-Trial Statement should be excluded as irrelevant to the issues to be tried in this case.

Specifically, Plaintiff has identified several incidents and events which predate the claims made in this case and which do not involve the principals he has accused of creating a hostile work environment and/or of discriminating against him. See Fed.R.Evid. 401-404. Plaintiff has also identified at least one witness who will purportedly testify, *inter alia*, about racial

---

[1] See Complaint (Doc. # 1), at ¶ 13. The Complaint goes on to detail a series of specific acts, all of which are alleged to have occurred between 1999 and 2003. See Complaint, at ¶¶ 13a-13o.

discrimination within the Pennsylvania State Police ("PSP") generally and/or his own personal experiences with racial discrimination within the PSP. Nevertheless, such testimony should be limited to any action or event which affected the Plaintiff and of which the witness has personal knowledge. See Fed.R.Evid. Rule 602 ("Lack of personal knowledge"); Article VIII ("Hearsay"). Finally, Plaintiff has offered several newspaper articles as proposed exhibits in his case, which should be deemed inadmissible as hearsay admitting of no exception. See Fed.R.Evid. Article VIII ("Hearsay"). These issues will now be addressed *seriatim*:

### A. Evidence of Incidents and Events Occurring Prior to July of 1999 is not Relevant to Plaintiff's Claims.

The Complaint filed by Plaintiff in this case alleges that Williams was subjected to disparate treatment and a hostile workplace based on race while he was employed as a Station Commander at PSP's Mercer Station from June 1, 1999 through the present. See Complaint (Doc. # 1), at ¶ 13. This is consistent with the EEOC complaint that Plaintiff filed and upon which he received his Right to Sue letter. See Exhibits A, B (attached to Defendant's Motion *in Limine*). Indeed, in Plaintiff's pretrial narrative statement he indicates the following:

> 10. Plaintiff's cause of action arises out of two grievances processed to arbitration by the Pennsylvania State Troopers Association ("PSTA") on behalf of Lt. Billy R. Williams ("Williams") against the Commonwealth of Pennsylvania, Pennsylvania State Police ("PSP").
>
> 11. The first grievance, D-200, contested the September 11, 2000 transfer of Williams by the PSP from Troop D Mercer to Troop D Butler as a disciplinary transfer.
>
> 12. The second grievance, D-203, contested the January 2, 2001 imposition of a ten (10) day suspension and a disciplinary transfer from Troop D Butler to Troop E Erie. As part of the remedy, Williams sought to be transferred back to the Mercer station.

Plaintiff's Pre-Trial Statement (Doc. # 25), at ¶¶ 10-12.

2

    However, Plaintiff later states in his Pre-Trial Statement that:

> 14. The hostile work environment continued into the years at Mercer 1993 to 2000 then onto Butler 2000 through 2001 then to Erie 2001 - 2005.
>
> 15. The racial discrimination became at its worst from 1998-1999 through December 2005.

Plaintiff's Pre-Trial Statement (Doc. # 25), at ¶¶ 14-15.

    Plaintiff has also identified a number of exhibits that relate to matters occurring as far back as 1993 up through 1998. See Exhibit C (attached to Defendant's Motion *in Limine*). These matters include "Race Complaints," "Race Grievances" and a prior "EEOC Race Complaint" Williams made in 1993, 1994 and 1995. As well, at his deposition, Williams made reference to these matters and also indicated that troopers at Mercer Station would engage in inappropriate or unprofessional conduct he believed to be racially motivated, including referring to him as "Slappy" behind his back and caricaturizing Williams based on his physical appearance by altering a picture in the station dictionary. See Exhibit D, at 32-50, 53-55, 119-122, 157-158 (attached to Defendant's Motion *in Limine*).

    The PSP objects to the introduction of or reference to any incidents or events that relate to matters occurring prior to the dates contained in Williams' EEOC complaint and the Complaint which initiated the instant federal action. Initially, the PSP believes that this evidence is not relevant to the claims made in his complaint as exhausted in the applicable administrative pleadings. Williams has based his claims on the treatment –beginning in July of 1999– he had received from his two direct superiors, his Troop Commander, Captain Simon, and his Area Commander, Major Seilhamer. Therefore, evidence of what transpired at Mercer station prior to July of 1999 is not relevant to Williams' present claims and would only serve to prejudice the PSP. Indeed, most if not all of this evidence is based upon anonymous conduct by unknown

members of Mercer Station; none of this evidence is attributed to Captain Simon (he did not even arrive at Troop D until January of 1999, and the only conduct attributed to Major Seilhamer is a temporary transfer from Station Commander at Mercer Station to Crime Section Lieutenant at Troop D Butler Headquarters.

Moreover, Williams received a right to sue letter in 1996 based upon many of these previous incidents and events and declined to act upon it; accordingly, Williams should not now be permitted to rely on these unrelated actions –including, *inter alia*, other "Slappy" references and dictionary caricatures– to support any claims raised in the instant action. See, e.g., Soso Liang Lo v. Pan American World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986)("We hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased. See Cleveland v. Douglas Aircraft Co., 509 F.2d 1027 (9th Cir.1975) (per curiam); Dowdell v. Sunshine Biscuits, Inc., 90 F.R.D. 107, 115-16 (M.D.Ga.1981)"). See also Clark v. Commonwealth of Pennsylvania, 885 F.Supp. 694, 711 (E.D.Pa. 1995).

The PSP recognizes that there is a difference between permitting the introduction of evidence in support of an independent claim of discrimination and admitting the evidence to support a claim of hostile work environment. See, e.g., West v. Philadelphia Electric Co., 45 F.3d 744 (3d Cir. 1995). In West, the trial court "concluded that the [300 day] statutory filing period limited the proper scope of evidence admissible to prove the claim" of hostile work environment asserted. West, 45 F.3d at 754. However, the Third Circuit concluded that the trial court's "strict application" of a rule limiting the plaintiff's evidence to the statutory 300-day limit

4

"[wa]s not appropriate, however, in a claim of a racially hostile work environment where both the existence of hostility and the employer's awareness of hostility can long predate the 300-day period." West, 45 F.3d at 756.

Instantly, the PSP is not seeking such a restrictive ruling as was made by the trial court in West; rather, the PSP is only asking that the Plaintiff's evidence be limited to the time frame alleged in the Complaint –beginning in July of 1999– because the evidence regarding these prior acts arising at Mercer Station is simply not relevant to the issue to be resolved in this litigation, *i.e.*, whether the actions of Captain Simon and Major Seilhamer violated Plaintiff's rights under Title VII. See Fed.R.Evid. 404.

Likewise, Williams' accounts of these prior incidents not involving Captain Simon and Major Seilhamer *and not reported* are also irrelevant and immaterial and would be unduly prejudicial under the circumstances. Fed.R.Evid. 402 and 403. This case is not about what this plaintiff claims he suffered on other occasions, or earlier events involving this plaintiff and other PSP members. Rather, this case is about the events which occurred beginning in July of 1999 involving Plaintiff's treatment by his two direct supervising officers, Captain Simon and Major Seilhamer. All other matters identified, suggested or alluded to in the Plaintiff's Pre-Trial Statement, proposed exhibits or prior deposition testimony are simply not relevant to these issues and should be excluded from this trial.

> **B.      Evidence of Erby Conley's Experiences with Race Discrimination in the Pennsylvania State Police is not Relevant to Plaintiff's Claims.**

In this case, plaintiff's claims are premised upon the alleged harassing or discriminatory treatment he received from his Troop D superiors (namely, Simon and Seilhamer) beginning in July of 1999. However, the anticipated testimony of Erby Conley –who was never assigned to

5

Troop D at either Mercer Station or Butler Headquarters– does not shed light on any of these matters. Initially, Conley indicated that other than a general notion that "there were problems down in Mercer with Billy Williams," he had no personal knowledge of Williams' situation until Williams told him. See Exhibit E, at 21-22, 28 (attached to Defendant's Motion *in Limine*). Conley also testified at his deposition regarding his own experiences with race while a member of the Pennsylvania State Police, mentioning one incident from over 30 years ago and another nearly 20 years ago; however, Conley has not identified any claim, charge or complaint alleging discrimination in employment he filed while he was a member of the PSP. See Exhibit E, at 23-27, 52.

      Conley's testimony has no relevance here. Whether *he or others* were subjected to discrimination in another Troop at some unidentified time has no bearing on whether Williams was subjected to harassment or discrimination at Troop D at Mercer Station or Butler Headquarters beginning in July of 1999. There is no temporal proximity or identity of actors.[2] The amorphous allegations by Conley –which, incidentally, never crystallized into even an informal charge or complaint– simply have nothing to do with the allegations made by Williams regarding his treatment at the hands of Captain Simon and Major Seilhamer at Troop D beginning in July of 1999. Such evidence is too temporally remote and attenuated to be considered evidence of the discrimination to which Williams claims he was subjected. See Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 359 (3d Cir. 1999). Moreover, Conley's testimony regarding Williams' treatment is only based upon conversations he had with Williams after the fact.

---

[2] Conley does recount some instances where he believes that he was mistreated by Major Seilhamer; however, other than referring to Major Seilhamer as a "racist," Conley offers no evidence to suggest that Major Seilhamer's actions were based on or motivated by Conley's race. See Exhibit E, at 32-33, 36-43, 51-52, 54-55, 63-64.

6

Above all, Conley's claims about *his* treatment as a member of the PSP have never been tested by *any* inquiry or investigation; thus, he could only offer his personal beliefs and opinions about alleged discriminatory treatment. Yet, mere allegations or opinions about discrimination or retaliation do not tend to prove that discrimination occurred, only that the complainant believed it occurred. See Jones v. School District of Philadelphia, 198 F.3d 403, 414 (3d Cir. 1999).

      **C.    In the Alternative, the Probative Value of the Conley Testimony about his own Experiences is Substantially outweighed by the Danger of Unfair Prejudice, Confusion of the Issues, Misleading the Jury or Undue Delay, Waste of Time.**

Rule 403 of the Federal Rules of Evidence provides that even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. See Fed.R.Evid. 403 Here, any conceivable probative value associated with the Conley opinion testimony is far outweighed by the danger of unfair prejudice to the Defendant and confusion of the issues.

Conley's testimony would inevitably generate confusion of issues as it would necessitate extensive testimony about any accusations and allegations he makes concerning his treatment while a member of the PSP, precisely what Rule 403 seeks to avoid. Also, admitting the Conley opinion testimony about inappropriate, harassing or discriminatory conduct in another Troop or Troops creates a very real danger that the jury will consider it as evidence that all black PSP officers, including Williams, were subjected to discriminatory treatment by their superiors, and that all PSP superior officers –including Captain Simon and Major Seilhamer– directed discriminatory and harassing behavior toward black officers under their command. The use of evidence for that purpose is prohibited by Fed.R.Evid. 404(b), which precludes evidence of

7

"other crimes, wrongs or acts" to prove the character of a person in order to show action in conformity therewith." The danger that this evidence will be considered for such an improper purpose unfairly prejudices the jury. See Robert S. v. Stetson School, Inc., 256 F.3d 159, 170-71 (3d Cir. 2001).

Moreover, allowing Conley to testify about his own experiences with discrimination within the PSP would further confuse the issues and generate undue delay. As stated, his opinions on race discrimination in the PSP generally would not be relevant to the question of whether Williams was himself the victim of discrimination or a hostile work environment at Mercer Station or Butler Headquarters. Nonetheless, if Conley would be permitted to discuss his own situation, PSP would have to bring in substantial documentation and evidence to rebut that testimony. See Coleman v. Home Depot, 306 F.3d at 1346-47 (3d Cir. 2002). Yet, because Conley never submitted any claim or charge of discrimination while a member of the PSP, the PSP would be substantially prejudiced in its efforts to respond to Conley's allegations because there would be no records from inquiries or investigations where responses to his claims could have been memorialized and documented.

### D. Evidence of Newspaper Articles is not Admissible to Support Plaintiff's Claims.

Williams has also submitted several newspaper articles as potential exhibits, including articles reporting on the Quota Incident at Mercer Station in February of 2000 and accounts of physical altercations between PSP members. See Exhibit E (attached to Defendant's Motion *in Limine*). Initially, these exhibits were not identified in Plaintiff's Pre-Trial Statement. See (Doc. # 25). More importantly, these articles are hearsay, not admitting of any exception. See, e.g., Barnes Foundation v. Township of Lower Merion, 982 F.Supp. 970, 996 (E.D.Pa. 1997)(cited in Jackson v. Light of Life Ministries, Inc., 2006 WL 2974162 (W.D.Pa. 2006) and Oaks v. City of

Philadelphia, 2002 WL 32373708 (E.D.Pa. 2002)).  See also Chicago Firefighters Local 2 v. City of Chicago, 249 F.3d 649, 654 (7th Cir. 2001)(citing Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997)).  Therefore, admission of these articles should be precluded.

WHEREFORE, the Corrections Defendant respectfully requests that the Court grant the foregoing Motion *in Limine*.

                Respectfully submitted,

                THOMAS W. CORBETT, JR.
                Attorney General

|  |  |
|---|---|
| Office of Attorney General | s/ Scott A. Bradley |
| 6th Floor, Manor Complex | Scott A. Bradley |
| 564 Forbes Avenue | Senior Deputy Attorney General |
| Pittsburgh, PA 15219 | Attorney I.D. No. 44627 |
| Phone: (412) 565-3586 |  |
| Fax:    (412) 565-3019 | Susan J. Forney |
|  | Chief Deputy Attorney General |

Date:  December 3, 2007

9